**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

KARIN PIOTROSKI,
individually and on behalf of a class of
similarly situated persons,

                Plaintiff,

     v.

DR. PEPPER/SEVEN UP, INC.,

                Defendant.

Case No. 2:25-cv-04818

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 1

LEGAL STANDARD .............................................................................................. 2

ARGUMENT ........................................................................................................... 3

    I.    Defendant's Statement is Actionable Because, even if True, it is Deceptive and
        Misleading to a Reasonable Consumer.......................................................... 3

        A.   Defendant Asks this Court to Commit an Error of Law ............................. 3

        B.   The Canada Dry Statement is Deceptive to Reasonable Consumers............ 4

        C.   Defendant's Alternative Explanation is Both Factually and Legally Flawed................ 8

        D.   Defendant's Cases are Distinguishable....................................................... 10

        E.   A Brand Name is Actionable ..................................................................... 16

    II.   Rule 15 Mandates That Leave to Amend Should be Given Freely ................................. 19

CONCLUSION........................................................................................................ 19

CERTIFICATE OF COMPLIANCE ....................................................................... 21

**Page(s)**

**CASES**

*Ackerman v. Coca-Cola Co.*,
2010 WL 2925955 (E.D.N.Y. July 21, 2010) ........................................................................ 18

*Anderson News, L.L.C. v. Am. Media, Inc.*,
680 F.3d 162 (2d Cir. 2012) ........................................................................................... 9, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................... 2

*Axon v. Florida'sNatural Growers*,
813 F.App.'x 701 (2d Cir. 2020) ................................................................................... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007) ......................................... 2, 9

*Bell v. Publix Super Markets, Inc.*,
982 F.3d 468 (7th Cir. 2020) ......................................................................................... 9

*Bowring v. SapporoU.S.A., Inc*,
237 F.Supp.3d 386 (E.D.N.Y. 2017) ............................................................................ 13

*Brady v. Bayer Corp.*,
26 Cal.App.5th 1156 (Cal. Ct. App. 2018) .................................................................. 18

*Campbell v. Whole Foods Market Grp.*,
516 F. Supp. 3d 370 (S.D.N.Y. 2021) .................................................................... 2, 3, 9

*Cooper v. Anheuser-Busch, LLC*,
2021 WL 3501203 (S.D.N.Y. Aug. 8, 2021) ............................................................... 18

*Culver v. Unilever United States, Inc*,
2021 WL 2943937 (C.D. Cal. June 14, 2021) ............................................................. 12

*de Dios Rodriguez v. Ole MexicanFoods, Inc.*,
2021 WL 1731604 (C.D. Cal. Apr. 22, 2021) .................................................. 14, 15, 16

*Dumas v. Diageo PLC*,
2016 WL 1367511 (S.D. Cal. Apr. 6, 2016) ................................................................ 16

*Eshelby v. L'Oreal USA, Inc.*,
664 F.Supp.3d 417 (S.D.N.Y. 2023) ....................................................................... 11, 12

*Forschner Group v. Arrow Trading Co,*
    30 F.3d 348 (2d Cir. 1994)............................................................... 10

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.,*
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ............................................... 18

*Hesse v. Godiva Chocolatier, Inc,*
    463 F.Supp.3d 453 (S.D.N.Y. 2020).......................................... 4, 5, 19

*Kay v. Copper Cane,LLC,*
    546 F. Supp. 3d 1014 (N.D. Cal. 2021) ........................................... 5

*Koch v. Acker, Merrall & Condit. Co.,*
    967 N.E.2d 675 (N.Y. 2012)........................................................... 3

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
    797 F.3d 160 (2d Cir. 2015)........................................................ 19

*Lynch v. City of New York,*
    952 F.3d 67 (2d Cir. 2020)................................................... passim

*Mantikas v. Kellogg Company,*
    910 F.3d 633 (2d Cir. 2018)..................................................... 13, 14

*Marty v.Anheuser-Busch Companies,*
    43 F.Supp.3d 1333 (S.D. Fla. 2014) ............................................... 5

*Moore v. Mars Petcare US, Inc.,*
    966 F.3d 1007. (9th Cir., 2020) .................................................... 17

*Nelson v. MillerCoors, LLC,*
    246 F.Supp.3d 666 (E.D.N.Y. 2017) ............................................. 13

*Peacock v. Pabst Brewing Company, LLC,*
    491 F.3d 713 (E.D. Cal. 2020)........................................................ 6

*Shalikar v. Asahi Beer U.S.A., Inc.,*
    2017 WL 9362139 (C.D. Cal., October 16, 2017).............................. 6

*Sinatro v. Barilla Am., Inc.,*
    635 F. Supp. 3d 858 (N.D. Cal., October 17, 2022) ...................... 7, 18

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ....................................................... 9

*Stutman v. Chemical Bank,*
    731 N.E.2d 608 (N.Y. 2000)......................................................... 4

*Valcarcel v. Ahold U.S.A., Inc.,*
    577 F. Supp. 3d 268 (S.D.N.Y. 2021).................................................................. 2

*Wasser v. All Market, Inc.,*
    2017 WL 11139701 (S.D. Fla. Nov. 13, 2017)................................................... 6, 7

*Williams v. Gerber Prods. Co.,*
    552 F.3d 934 (9th Cir. 2008) ............................................................................. 14, 19

## STATUTES

15 U.S.C. § 1125.................................................................................................... 11, 17

## RULES

Federal Rule of Civil Procedure 8 ........................................................................... 2
Federal Rule of Civil Procedure 9 ........................................................................... 2
Federal Rule of Civil Procedure 15 ......................................................................... 19

Plaintiff Karin Piotroski ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant Dr Pepper/Seven Up, Inc.'s ("Defendant") Motion to Dismiss ("Motion"). For the reasons set forth below, the Court should deny the Motion.

## INTRODUCTION

Defendant argues that it is absurd for a consumer to see products named "Canada Dry" and believe they are produced in Canada. While typically, such questions of fact are for the jury, Defendant believes the proposition is so absurd that the Court should take the rare step and state unequivocally, as a matter of law, that no one can believe this. To the contrary, it is not an absurd proposition to believe that a product named "Canada Dry" is produced in Canada. It is Orwellian doublespeak to say Canada does not mean Canada.

Defendant also argues Plaintiff failed to allege "anyone other than plaintiff Piotroski herself would find the place of the products' manufacture material." Motion at 3. In so doing, Defendant is asking this court to commit a drastic error of law by importing reliance into the claims, when the New York Court of Appeals has made very clear that reliance is not an element.

In short, the Motion does not withstand scrutiny and thus should be denied in full.

## FACTUAL BACKGROUND

Defendant's "Canada Dry" statement on its Products misleads consumers to believe the Products are produced in Canada. *See* Complaint (ECF No. 1) (hereafter "Compl.") at ¶¶ 2, 3, 4, 22-24, 29. However, the Products are produced in the United States. *Id.* ¶ 4, 28, 32. Hence, the Canada Dry statement is false and misleading. *Id.* ¶ 30. As a result of these misrepresentations, Plaintiff and the Class members paid a premium price for the Products. *Id.* ¶¶ 34-48, 59, 61, 68, 75-76.

## **LEGAL STANDARD**

It is well-established that "[c]laims under GBL §§ 349 and 350 are not required to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *Campbell v. Whole Foods Market Grp.*, 516 F. Supp. 3d 370, 381 (S.D.N.Y. 2021) (citation omitted). Thus, to survive a Rule 12(b)(6) motion, the Complaint need only set forth "a short and plain statement of the claim showing that [Plaintiff] is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 275 (S.D.N.Y. 2021) (quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)). It is equally well-established that "'[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 275 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Indeed, "[b]ecause plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible." *Lynch*, 952 F.3d at 75 (citation omitted). Consequently, "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Id.*

As the United States Supreme Court has recognized, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007)) Thus, "'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Valcarcel*, 577 F.Supp.3d at 275 (quoting *Twombly*, 550 U.S. at 556).

## ARGUMENT

This action arises out of the prominent "Canada Dry" statement on the packaging of Defendant's Products that gives the misleading impression that the Products are from Canada when, in fact, they are produced in the United States. As the Court is no doubt aware, "this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Campbell* 516 F. Supp. 3d at 381 (citation omitted).

## I. DEFENDANT'S STATEMENT IS ACTIONABLE BECAUSE, EVEN IF TRUE, IT IS DECEPTIVE AND MISLEADING TO A REASONABLE CONSUMER

Defendant boldly asserts that its statement is not actionable as a matter of law because 1) there is no evidence that consumers, other than the Plaintiff, care where the Products are manufactured; 2) the Canada statement is about the "type" of drink, not where it is from; and 3) the statement is its brand, which it is entitled to use. Defendant is wrong on the facts and the law.

### A. Defendant Asks this Court to Commit an Error of Law

According to Defendant, "the Complaint is devoid of any allegations that the place of the soft drinks' manufacture would be material to a reasonable purchaser." Mot. at 1. It later argues that "the Complaint does not even attempt to allege that anyone other than plaintiff Piotroski herself would find the place of the products' manufacture material." *Id.* at 3. In so arguing, Defendant is asking this Court to dismiss the Complaint because Plaintiff has not shown that people care about the representation. This is a foundational error of law.

The New York Court of Appeals has made very clear that reliance is not an element of the GBL §§ 349 or 350 claims. *See Koch v. Acker, Merrall & Condit. Co.*, 967 N.E.2d 675, 676 (N.Y. 2012) ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law §§ 349 and 350 claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim"). As the New York Court of Appeals described it in *Stutman v.*

*Chemical Bank*, "[t]he Appellate Division's ruling clearly imposed a reliance requirement: that plaintiffs made the decision to take the loan in reliance on their belief that the $275 fee would not apply." *Stutman v. Chemical Bank*, 731 N.E.2d 608, 612 (N.Y. 2000) (citing the Restatement Second of Torts § 538(2) ("a justifiable reliance on a fraudulent misrepresentation is shown if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question'"). The *Stutman* court made clear that this was an error. *Id.*

Defendant asks the Court to make the same error and judge whether Plaintiff has pled that other consumers would find the Canada Dry statement to be important. It is inviting the Court to commit an error of law, and as such, this argument should be ignored.

**B.  The Canada Dry Statement is Deceptive to Reasonable Consumers**

Defendant claims—*ipse dixit*—that, as a matter of law, no reasonable consumer could see the statement "Canada Dry" and believe the product is from Canada. Beyond the Orwellian levels of doublespeak needed to argue Canada does not mean Canada, the argument is contrary to law.

The decision in *Hesse v. Godiva Chocolatier, Inc.* is directly on point. *Hesse*, 463 F.Supp.3d 453, 460 (S.D.N.Y. 2020). In rejecting the same argument, the *Hesse* court reasoned:

> This is not one of the rare instances in which the Court may dismiss a consumer-protection claim on this posture. To the contrary, a reasonable consumer could view the phrase Belgium 1926 as representing that Godiva's chocolates are manufactured in Belgium. Godiva attempts to escape this plausible view by noting that it was founded in Belgium in the year 1926, and thus arguing that the representation is a "factually accurate phrase that imparts an unambiguous and historically accurate message." Def. Br. at 10. However, an equally, if not more, plausible inference is that the phrase represents *both* the provenance of the company—Belgium, in 1926—and a representation that its chocolates continue to be manufactured there. Indeed, Godiva does not explain why this latter inference is categorically unreasonable, given that it is plausible for a consumer to interpret the representation as meaning that its chocolates are made in the same place as they were when the company was founded. The Court certainly cannot conclude, at this juncture, that *no* reasonable consumer could take such a view.

*Id.* at 467.

The reasoning in *Hesse* applies with equal force here. A reasonable consumer could read the Canada Dry statement, presented in a shield under the phrase "Since 1904", and believe the Products are still produced in Canada. That is, in the words of *Hesse*, "that the phrase represents *both* the provenance of the company—[Canada], in [1904]—and a representation that its [beverages] continue to be manufactured there." As such, "[t]his is not one of the rare instances in which the Court may dismiss a consumer-protection claim on this posture." *Hesse*, 463 F.Supp.3d at 467.

The *Hesse* court is not alone in this, as courts in other circuits have found similarly. In *Marty v. Anheuser-Busch Companies, LLC*, for example, consumers brought suit against the manufacturer of Beck's for misleading consumers into believing the beer was German, based on claims that it "Originated in Germany" with "German Quality" while "Brewed Under the German Purity Law of 1516." *Marty*, 43 F.Supp.3d 1333, 1340 (S.D. Fla. 2014). The court found the allegations were sufficient to conclude that a reasonable consumer may be misled to believe that Beck's is an imported beer brewed in Germany. *Id.* at 1342. The reasoning in *Marty* holds perfectly here, where in both cases, the labels' statements discuss the products' origins.

Other courts have held likewise. In *Kay v. Copper Cane, LLC*, for example, the plaintiff brought suit against a California wine manufacturer for misleading consumers with the name "Oregon Pinot Noir" and the statements that the "coastal hills" of Oregon are an ideal region to grow wine, including a map of Oregon with leaves over the relevant valleys, and the statement "Purely Oregon, Always Coastal." *Kay*, 546 F. Supp. 3d 1014, 1019 (N.D. Cal. 2021). In rejecting the argument that this was puffery, the court noted, "a geographic reference on a wine label is understood to be an assertion about the origin of the product." *Id.* at 1025.

In *Peacock v. Pabst Brewing Company, LLC*, the plaintiff brought suit against a beer manufacturer, alleging the name "The Original Olympia Beer" coupled with the slogan "It's the Water" and an image of a cascading waterfall gave consumers the false impression that the beer was from the Olympia area in Washington. *Peacock*, 491 F.3d 713, 717 (E.D. Cal. 2020). The defendant moved to dismiss, arguing—just as Defendant does here—that no reasonable consumer could be misled into believing the products were from Olympia. *Id.* 719. In rejecting the claim, the court noted, "[a]lthough Olympia's packaging does not contain a map pinpointing the alleged misrepresentation or an explicit statement regarding the origin, Plaintiff alleges enough facts to draw a reasonable inference that a reasonable consumer would believe Olympia Beer is brewed with water from the Olympia area of Washington." *Id.* at 720. Just as in *Peacock*, a reasonable consumer can and does believe the Products are produced in Canada.

In *Shalikar v. Asahi Beer U.S.A., Inc.*, the plaintiff brought suit against a beer manufacturer, alleging the name "Asahi," which means morning sun in Japanese, the Japanese Katakana script of the name, the Katakana script of "Super Dry," and the Japanese Kanji characters which translate to "dry taste," led consumers to believe the product was from Japan, notwithstanding a disclosure on the bottles stating it was brewed in Canada. *Shalikar v. Asahi Beer U.S.A., Inc.*, 2017 WL 9362139, at *7 (C.D. Cal., October 16, 2017). Despite the disclosure, the court concluded: "that the 'words, pictures [and] diagrams adorning the packaging' could give rise to a reasonable inference or belief that the Product was produced in Japan." *Id.* at *8. The "Canada Dry" statement here is even more direct than *Shalikar*, as there is an actual mention of the country.

In *Wasser v. All Market, Inc.*, the plaintiff brought suit against the manufacturer of Vita Coco for misleading consumers into believing the product was from Brazil with the phrase "Born in Brazil." *Wasser*, 2017 WL 11139701, at *4 (S.D. Fla. Nov. 13, 2017). The court noted that the

phrase must be analyzed with respect to the wider marketing campaign to associate the product with Brazil and that the phrase was one of origin rather than heritage. *Id.* at *5. The same holds true here, where the name leads reasonable consumers to believe the Products are produced in Canada.

In *Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858, 878-79 (N.D. Cal., October 17, 2022), the defendant argued that the statement, "ITALY'S #1 BRAND OF PASTA," is its registered trademark, its utility is to exclusively identify Barilla (not Italy) as the source of the product, and that Plaintiff's allegations that it would mislead reasonable consumers to believe the products are manufactured in Italy is implausible. The court disagreed and held that it cannot determine that the challenged statements can only mean one thing as a matter of law. It held that, looking at the context as a whole, the complaint plausibly alleged that the challenged representations support a reasonable inference that the products were made in Italy from Italian ingredients and a probability that a significant portion of the general consuming public or targeted consumers, acting reasonably in the circumstances, could be misled by the challenged representations. The Court also noted a key point there, that the labels connected the origin to the present day. *Id.* at 879. Here, the challenged statements do not merely reflect the company's history. Instead, the phrase "Canada Dry" suggests that the Products are currently from Canada. This is reinforced by the phrase "Since 1904," which, according to Merriam-Webster, one definition of the word "since" is "from a definite past time until now."[1] Thus, the phrase "Since 1904" links the "Canada Dry" statement from the past to the present, just as in *Sinatro*.

---

[1] Merriam-Webster, "Since" (last visited Oct. 13, 2025), https://www.merriam-webster.com/dictionary/since.

## C. **Defendant's Alternative Explanation is Both Factually and Legally Flawed**

Defendant ignores the plain reading of the "Canada Dry" statement, and instead proposes that it "refers to a *type* of product – originally, a less sweet and syrupy ginger ale – and not a country of origin." Mot. at 3. But this argument suffers both legal and factual flaws.

*Factually*, it simply does not hold together. If it refers to a type of ginger ale, why does it appear on products which are not ginger ale, such as Club Soda and Tonic Water. In the context of these products, how could "Canada Dry"—allegedly a statement of less sweet and syrupy ginger ale—be a discussion of type? Or, for example, how can Canada Dry Fruit Splash Cherry Ginger Ale be said to be "less sweet" when its primary ingredients are carbonated water and high fructose corn syrup, and it has nearly as much sugar as Sprite?[2] For these Products, "Canada Dry" as a less sweet "type" of ginger ale makes no sense.

Defendant likens the "Canada Dry" statement to "Italian Roast" coffee, or "French toast." Mot. at 3. But multiple brands carry the "Italian Roast" statement[3] and the "French toast" statement.[4] The same cannot be said of the "Canada Dry" statement, as no other brands carry it, whether ginger ale, club soda, tonic water, or the like.

At base, these questions lay bare that if Defendant wishes to put forward this alternative explanation, discovery is required. We will need to know, for example, 1) why does it appear on non-ginger ale products; 2) for ginger ale products, how sweet are they compared to other products

---

[2] *Compare* Canada Dry Fruit Splash Cherry Ginger Ale (36 grams of sugar) (last visited Oct. 13, 2025) https://www.canadadry.com/products/canada-dry-fruit-splash-cherry-ginger-ale; *with* Sprite (38 grams of sugar) (last visited Oct. 13, 2025) https://www.coca-cola.com/us/en/brands/sprite/products#accordion-39234b0aa2-item-9b549c4605.

[3] *See e.g.* Starbucks Italian Dark Roast Ground Coffee (last visited Oct. 13, 2025) https://www.target.com/p/starbucks-dark-roast-ground-coffee-8212-italian-roast-8212-100-arabica-8212-1-bag-12-oz/-/A-12954333#lnk=sametab; Good & Gather Italian Dark Roast Ground Coffee (last visited Oct. 13, 2025) https://www.target.com/p/italian-dark-roast-ground-coffee-12oz-good-38-gather-8482/-/A-78630660#lnk=sametab.

[4] *See e.g.* Kodiak French Toast Sticks (last visited Oct. 13, 2025) https://www.target.com/p/kodiak-protein-packed-frozen-cinnamon-french-toast-sticks-14-5oz/-/A-90009078#lnk=sametab; Market Pantry French Toast Sticks (last visited Oct. 13, 2025) https://www.target.com/p/cinnamon-frozen-french-toast-sticks-16oz-12ct-market-pantry-8482/-/A-90369465#lnk=sametab.

(e.g. Sprite); 3) are there any products—other than Defendant's—that carry the "Canada Dry" statement, such that it might render it a "type" rather than a brand; etc.? But the fact that these fundamental questions remain unanswered proves this matter is not ripe for determination at this stage; this case calls for summary judgment, not a motion to dismiss.

*Legally*, the argument is equally flawed. As the Second Circuit made clear in *Lynch*, "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Lynch*, 952 F.3d at 75; *see Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020) ("The district court's dismissal erred by departing from the Rule 12(b)(6) standard and attributing to ordinary supermarket shoppers a mode of interpretation more familiar to judges trying to interpret statutes in the quiet of their chambers"); *Campbell v. Whole Foods Market Grp., Inc.*, 516 F.Supp.3d 370, 384 (S.D.N.Y. 2021) ("It is important to remember that 'at least in some cases, "a federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare" that reasonable consumers would not be misled'").

Simply because Defendant can back into an alternative interpretation of the "Canada Dry" statement is not enough for dismissal. Rather,

> Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible. The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only "plausibly suggest an entitlement to relief." *Id.* at 1951. As the Court wrote in *Twombly,* Rule 8(a) "*does not impose a probability requirement at the pleading stage;* it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations.

*Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556); *see also Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (citation omitted) ("'[F]act-specific question[s] cannot be resolved on the pleadings.' A court ruling on such a motion

may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible").

Defendant has not shown that Plaintiff's allegations are ***implausible***. To the contrary, it is perfectly logical that the phrase "Canada Dry" leads consumers to believe the product is from Canada. As such, the Motion should be denied.

### D. Defendant's Cases are Distinguishable

The cases cited by Defendant are inapposite. Perhaps most damning is Defendant's reliance on the Second Circuit's decision in *Forschner Group v. Arrow Trading Co.* which supports Plaintiff's position. Motion at 7. *First*, the appeal arose following a bench trial in which both sides presented consumer surveys. *Foschner Grp.*, 30 F.3d 348, 352 (2d Cir. 1994). By contrast, here Defendant seeks dismissal before submitting similar survey evidence to the trier of fact.

*Second*, the Court of Appeal's analysis supports, rather than weakens, Plaintiff's claims. Specifically, the Court of Appeal's analysis of whether the phrase "Swiss Army knife" could be a designation of geographic origin turned on whether it was geographically descriptive, that is, "one that 'designates geographical location and would tend to be regarded by buyers as descriptive of the geographic location of origin of the goods or services.'" *Id.* at 355 (quoting 1 J.T. McCarthy, *Trademarks and Unfair Competition*, § 14.02). The court observed, "[i]f Victorinox or Wenger promoted a product as 'Swiss pocketknife,' the word 'Swiss' would be said to denote geographic origin." But the court could not "consider the word 'Swiss' otherwise than as part of the phrase 'Swiss Army.'" *Id.* The Second Circuit ultimately determined that:

> As used in the phrase Swiss Army knife, "Swiss" is read more naturally to modify "Army" than "knife"—and probably does. The phrase Swiss Army knife therefore denotes a knife of the type associated with the Swiss Army, rather than a military knife manufactured in Switzerland.

*Id.* at 356.

Applying the *Foschner Group* analysis to the present suit yields the opposite result. Unlike *Forschner Group* where there was a separate noun that was being modified (i.e. "Army"), here there is not. The word "Canada", in the name "Canada Dry", is most naturally read to modify the silent subject: the beverage, thus indicating the beverages are from Canada. Under the reasoning in *Forschner Group*, "Canada Dry" constitutes a designation of geographic origin, thereby supporting Plaintiff's interpretation that the Products are from Canada.

Defendant's other cases are distinguishable. Defendant relies on *Eshelby v. L'Oreal USA, Inc.*, but the *Eshelby* court made two fundamental errors of law. *First*, the court stated—as if it were some form of immunity—that "L'Oréal has a right to use its brand name to correctly indicate that its products belong to the L'Oréal Paris brand." *Eshelby*, 664 F.Supp.3d 417, 424 (S.D.N.Y. 2023). Contrary to the *Eshelby* court's conclusion, the mere fact that it is a brand name does not inoculate it from challenges that it is deceptive. For example, the Lanham Act—which governs trademarks—has an express provision for lawsuits in which the trademark is deceptive as to the geographic origin of the product. *See* 15 U.S.C. § 1125(a)(1) (allowing civil suit against "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin. . . or (B) in commercial advertising or promotion, misrepresents the. . . geographic origin of his or her or another person's goods, services, or commercial activities"). But the Lanham Act is not alone in this. As will be discussed *infra* Part I.E., plenty of courts have found brand names to be actionable.

The second error that the *Eshelby* court made was to accept wholeheartedly the defendant's interpretation of the statement. But this contradicts the Second Circuit's mandates in *Lynch* and

*Anderson News* that the Court is not to select between competing interpretations on a 12(b)(6) motion. *See Lynch*, 952 F.3d at 75; *Anderson News*, 680 F.3d at 185.

But *Eshelby* is also distinguishable on the facts. In *Eshelby*, the back label read "Made in U.S.A." *Eshelby*, No. 1:22-cv-1396 (S.D.N.Y.), ECF No. 1 at ¶ 42. Here, by contrast, it states "**Produced under the Authority of** Dr. Pepper/Seven Up, Inc., 6425 Hall of Fame Lane, Frisco, TX 75034." *See* Baksh Decl., Ex. A (emphasis added). There is a big difference between being "Made in," and being "Produced under the Authority of." For example, Toyota Motor Corporation is headquartered in Aichi, Japan, but a Camry Hybrid may be manufactured in Georgetown, Kentucky.[5] So the Camry Hybrid would be "Made in U.S.A." but "Produced under the Authority of Toyota Motor Corporation, Aichi, Japan."

The same is true here, where the Products could be "Made in Canada" but "Produced under the Authority of Dr. Pepper/Seven Up, Inc., 6425 Hall of Fame Lane, Frisco, TX 75034." However, to the detriment of consumers, that is not the case. Ultimately, this statement does not clarify where the Products are manufactured, and certainly not to a point where it can be said—as a matter of law—that no reasonable consumer could be deceived by the "Canada Dry" statement in large print on the front of the Products.

Similarly, in *Culver v. Unilever United States, Inc.,* the phrases "Paris," "Depuis 1747" and "Que Maille" on the front label of the products were challenged as misleading reasonable consumers into believing that the Products were made in France, but the back label said "Product of Canada." *Culver*, 2021 WL 2943937, at *1 (C.D. Cal. June 14, 2021). This language has the same critical distinction as *Eshelby*; namely, the difference between "Made in" and "Produced Under the Authority of."

---

[5] Toyota Motor Manufacturing Kentucky, https://pressroom.toyota.com/facility/toyota-motor-manufacturing-kentucky/ (last visited October 14, 2025).

The same holds true for *Nelson v. MillerCoors, LLC*, in which the plaintiff challenged the "Foster's – Australian for Beer" statement, as well as the other Australian symbolism. *Nelson*, 246 F.Supp.3d 666, 673 (E.D.N.Y. 2017). In *Nelson*, the back label stated "Brewed and Packaged Under the Supervision of Foster's Australia Ltd, Melbourne, Australia, by Oil Can Breweries, Albany, GA, and Fort Worth, TX." *Id.* at 675. For the *Nelson* court, the Australian statements were "eclipsed by the accurate disclosure statement." *Id.* 676. For present purposes, the *Nelson* disclosure goes a step further than the disclosure here by identifying both the supervising entity (i.e. Foster's Australia Ltd, Melbourne, Australia) ***as well as*** the manufacturing entity (i.e. Oil Can Breweries, Albany, GA and Fort Worth, TX). Defendant's disclosure only identifies the former, not the latter.

The decision in *Bowring v. Sapporo U.S.A., Inc.* suffers from the same problem, where the back label disclosed that the product was "Imported by Sapporo U.S.A. Inc, New York, NY" and "Brewed and canned [or bottled] by Sapporo Brewing Company, Guelph, Ontario, Canada." *Bowring*, 237 F.Supp.3d 386, 388-89 (E.D.N.Y. 2017). As in *Nelson*, the *Bowring* product disclosed ***both*** the importer and the location of manufacturing. Again, here, Defendant only disclosed the former but not the latter.

Moreover, *Nelson* and *Bowring* were decided more than a year and a half before the Second Circuit's decision in *Mantikas v. Kellogg Company*, where a plaintiff brought suit against a cracker manufacturer for the prominent "Whole Grain" claim on the front of the package despite the primary flour not being whole grain. *Mantikas*, 910 F.3d 633, 635-36 (2d Cir. 2018). The defendant argued consumers could not be deceived because the side panel disclosed the ingredients. *Id.* at 637. But the Second Circuit disagreed for two reasons. *First*, "the specification that 29 grams is the total weight of a serving does not adequately dispel the inference communicated by the front

of the package that the grain in 'whole grain' crackers is predominantly whole grain because it does not tell what part of the 29-gram total weight is grain of any kind." *Id.* at 637. *Second*:

> Moreover, we cannot conclude that these disclosures on the side of the box render Plaintiffs' allegations of deception implausible. "[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). "Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that *confirms* other representations on the packaging." *Id.* at 939-40 (emphasis added). We conclude that a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box. Plaintiffs plausibly allege that the Nutrition Facts panel and ingredients list on whole grain Cheez-Its—which reveals that enriched white flour is the predominant ingredient—contradict, rather than confirm, Defendant's "whole grain" representations on the front of the box.

*Mantikas*, 910 F.3d at 637.

Applying the reasoning in *Mantikas* to the present case, *first*, Defendant's disclosure in small print on the back does not clarify where the Products are made, it only clarifies under whose authority they are made. As such, this "does not adequately dispel the inference communicated by the front of the package." *Second*, Plaintiff should not be required to hunt on the back of the package to correct claims made on the front. Rather, those claims must confirm, not correct, the claims on the front. As such, under the Second Circuit's decision in *Mantikas*, the disclosure on the back does not "render Plaintiff[']s allegations of deception implausible." *Id.*

While following similar Ninth Circuit precedent, the court in *de Dios Rodriguez v. Ole Mexican Foods, Inc.* came to a similar conclusion. In *de Dios Rodriguez*, the plaintiff challenged a number of phrases including "references to the Mexican flag, the phrase 'El Sabor de Mexico!' or 'A Taste of Mexico!', the brand name 'La Banderita,' and the Spanish phrase 'Tortillas de Maiz' on the label of the Corn tortillas." *de Dios Rodriguez*, 2021 WL 1731604, at \*1 (C.D. Cal. Apr. 22, 2021). In denying the motion to dismiss based on the presence of a disclosure, the court stated:

Although the Products include disclosures in the back of the label that the tortillas are "Made in the U.S.A." and manufactured in Norcross, GA, the alleged misrepresentations are prominently displayed in the front label, and the Ninth Circuit has noted that a reasonable consumer is not "expected to look beyond misleading representations on the front of the box to discover the truth." In any event, while Defendant counters that these disclosures are not "back-label" or "fine-print," the Court finds that "[t]he effect of the disclosures cannot be determined as a matter of law on the present record." Thus, "the facts of this case ... do not amount to the rare situation in which granting a motion to dismiss is appropriate."

*Id.* at *5 (citation omitted).

Applying *de Dios Rodriguez* to the present matter, the Court cannot say as a matter of law that Defendant's "produced under the authority of" statement in the fine print on the back is sufficient to overcome the prominent "Canada Dry" statement on the front, such that no reasonable consumer could be deceived. This is not the "rare situation."

Nor did the *Nelson* and *Bowring* courts have the benefit of the decision from the New York Court of Appeals in *Himmelstein, McConnel, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.* where they stated that "[a] disclaimer may not bar a GBL § 349 claim at the pleading stage unless it utterly refutes plaintiff's allegations and thus establishes a defense as a matter of law." *Himmelstein, McConnel, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.169, 180 (N.Y. 2021) (citation omitted). "The defendant must do more than disclaim liability generally; instead, a disclaimer must address the alleged deceptive conduct precisely, so as to eliminate any possibility that a reasonable consumer would be misled." *Id.* "Furthermore, where the overall impression of the representations is misleading (notwithstanding the disclaimer), the disclaimer is not a defense as a matter of law. *Id.*

Under *Himmlestein*, the "produced under the authority of" statement is only sufficient as a matter of law if it "eliminate[s] any possibility that a reasonable consumer would be misled." But as discussed above, it fails to do so.

Defendant also relies on the decision in *Dumas v. Diageo PLC*, but this too is distinguishable. In *Dumas*, the plaintiff brought suit against the manufacturer of Red Stripe for its statements "Jamaican Style Lager" and "Taste of Jamaica" as implying the product was from Jamaica. *Dumas*, 2016 WL 1367511, at *1 (S.D. Cal. Apr. 6, 2016). In rejecting the first claim, the court noted that the word "Jamaican" modifies the word "Style," not "Lager," and "the very fact that the word 'style' is used indicates the product is *not* from Jamaica." *Id.* at *4 (emphasis in original). In rejecting the second phrase, "The Taste of Jamaica," the court found this phrase ambiguous. It concluded that "[w]hen viewed together with the phrase 'Jamaican Style Lager,' a reasonable interpretation of the phrase is that the beer is made in a way that people identify with Jamaica (either a particular process and/or a certain recipe) and evokes the spirit and feeling of Jamaica." *Id.* The *Dumas* decision is readily distinguishable. While Defendant argues that "Canada Dry" is a "type" of ginger ale, as discussed, this argument is both legally and factually flawed. *See supra* Part I.C.

But there is an additional reason that *Dumas* is distinguishable, because of the inclusion of the word "style" in the at issue phrase. This word allowed the *Dumas* court to distinguish the phrase from a statement of the geographic origin of the product. *Id.* at *4. But the word "style" does not appear here, rendering the *Dumas* reasoning distinguishable. *See de Dios Rodriguez*, 2021 WL 1731604, at *4 (distinguishing *Dumas* because "there is no such indication about 'style' that would similarly suggest that the Products are not from Mexico").

### E.  A Brand Name is Actionable

Defendant also asserts that the statements on the label are its brand and are, therefore, not actionable. Motion at 3. But this argument falls flat both factually and legally. *Factually*, Defendant is speaking out of both sides of its mouth. In the same paragraph, it argues that "Canada Dry" is the brand, but then argues it refers to a *type* of beverage, such as "Italian Roast" coffee or

"French toast." Motion at 3. And while the argument for it being a type of beverage is wrong, *see supra* Part I.C., it is also incongruent with the argument that "Canada Dry" is the brand. It is either one or the other. For example, Starbucks is the brand (which is exclusive to Starbucks), while Italian Roast is the type of coffee (which is not exclusive to Starbucks).[6]

The argument is also legally flawed; brand names can be actionable as deceptive representations. For example, as discussed previously, *supra* Part I.D., the Lanham Act provides a cause of action for trademarks that mislead consumers as to the geographic origins of the products. *See* 15 U.S.C. § 1125(a)(1). The Lanham Act is not alone. In *Axon v. Florida's Natural Growers, Inc.*, the Second Circuit analyzed whether the brand name "Florida's Natural" led consumers to believe the product did not contain trace amounts of glyphosate. *Axon*, 813 F.App.'x 701, 705 (2d Cir. 2020). While the Second Circuit ultimately upheld the order dismissing the claim as being too farfetched, it made no distinction between a brand and the other statements on the package. *See id.* ("Contrary to Axon's characterizations of the district court's analysis, the court did not conclude that a brand name can never be misleading, but merely performed the requisite objective reasonable consumer inquiry under the circumstances of this case").

Similarly, the Ninth Circuit has stated, "brand names *by themselves* can be misleading in the context of the product being marketed. Descriptive brand names require of the consumer 'little thought,' which can make consumers susceptible to purchasing because *they won't have the time or interest to read about [the product] on [the] website or the back of the box*." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1018. (9th Cir., 2020) (internal citations and quotations omitted) (emphasis in original).

---

[6] *See e.g.* Starbucks Italian Dark Roast Ground Coffee (last visited Oct. 13, 2025) https://www.target.com/p/starbucks-dark-roast-ground-coffee-8212-italian-roast-8212-100-arabica-8212-1-bag-12-oz/-/A-12954333#lnk=sametab

Further, numerous courts in this circuit have denied motions to dismiss claims that brand names are deceptive or misleading. *See Cooper v. Anheuser-Busch, LLC*, 2021 WL 3501203, at *10 (S.D.N.Y. Aug. 8, 2021) ("Ritas" brand name could be misleading and therefore actionable under state law); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.* 8 F. Supp. 3d 467, 475 (S.D.N.Y. 2014) ("Active Naturals" brand name could be misleading and therefore actionable under GBL § 349); *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at * 13 (E.D.N.Y. July 21, 2010) (brand name "vitaminwater" could be misleading). Collectively, this authority makes clear that there is no carveout for brand names under GBL § 349 and 350.

Courts in other circuits have found likewise. For example, in *White v. T.W. Garner Food Co.*, 2023 U.S. Dist. LEXIS 133180 at *9-11 (C.D. Cal., July 31, 2023), the product's brand name was Texas Pete, but the product came from North Carolina. The court found, among other things, that even though Texas Pete is a brand name and trademarked, it is plausible that a reasonable consumer would believe it was from Texas.

Similarly, in *Sinatro*, the court allowed a claim against the trademark "Italy's #1 Brand of Pasta" to proceed where the products were not from Italy. *Sinatro*¸ 635 F.Supp.3d at 881; *see also Brady v. Bayer Corp.*, 26 Cal.App.5th 1156, 1170 (Cal. Ct. App. 2018) ("Any number of cases have held that brand names *by themselves* can be misleading in the context of the product being marketed" and holding the brand name "One-a-Day" could mislead consumers); *Hernandez v. Radio Systems Corp.*, 2023 LW 4291829, at *9 (C.D. Cal. May 10, 2023) ("In addition, RSC's brand name may significantly contribute to consumer deception, for brand names can be an especially powerful source of misleading information").

Here, it is also plausible that the brand name "Canada Dry" would lead a reasonable consumer to believe that the product is produced in Canada.

*    *    *    *    *

In sum, the brand name constitutes a designation of geographic origin (*i.e.,* the Products are produced in Canada). This conclusion is bolstered by the additional statements on the packaging, as analyzed through the lens of *Hesse*, *Marty*, *Kay*, *Peacock*, *Shalikar*, *Wasser* and the other cases discussed above. Critical to the present motion, the Second Circuit has made clear that "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Lynch*, 952 F.3d at 75. Given the weight of this authority and the recognition that it is "only the 'rare situation' where 'it [is] impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived,'"[7] the Court should deny the Motion and allow the matter to proceed.

## II. RULE 15 MANDATES THAT LEAVE TO AMEND SHOULD BE GIVEN FREELY

Federal Rule of Civil Procedure 15 mandates that courts "should freely give leave" to amend in the early stages of litigation "when justice so requires." Fed. R. Civ. P. 15(a)(2). This permissive standard is consistent with the Second Circuit's "strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Plaintiff believes her Complaint sets forth plausible claims for relief; nonetheless, if the Court finds that any aspect of Plaintiff's claims is insufficiently pled, Plaintiff respectfully requests leave to amend to address the insufficiency.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion to Dismiss. Or, in the alternative, the Court should grant Plaintiff leave to file an Amended Complaint.

---

[7] *Hesse*, 463 F.Supp.3d at 467 (quoting *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)) (modification in original).

Date: October 16, 2025              Respectfully submitted,

**REESE LLP**

*/s/ Charles D. Moore*
Charles D. Moore
121 N. Washington Ave., 2nd Floor
Minneapolis, Minnesota 55402
Telephone: 212-643-0500
Email: *cmoore@reesellp.com*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email: *mreese@reesellp.com*

**BEN TRAVIS LAW, APC**
Ben Travis
4660 La Jolla Village Drive, Suite 100
San Diego, California 92122
Telephone: (619) 353-7966
Email: *ben@bentravislaw.com*

*Attorneys for Plaintiff and the Proposed Class*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify pursuant to Local Rules 6.1 and 7.1(c) that the Memorandum of Law in Support of Plaintiffs' Motion for Class Certification uses a proportionally spaced,  Times New Roman typeface of 12 points and contains 6,444 words, as counted by the Microsoft Word processing system used to produce this brief.

Date: October 16, 2025

Respectfully submitted,

**REESE LLP**
 */s/ Charles D. Moore*
Charles D. Moore
121 N. Washington Ave, 2nd Floor
Minneapolis, MN 55401
(212) 643-0500