**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Karin Piotroski,<br><br>    Plaintiff,<br><br>v.<br><br>Dr Pepper/Seven Up, Inc.,<br><br>    Defendant. | Case No.: 2:25-cv-04818<br><br><u>**REPLY IN SUPPORT OF MOTION TO DISMISS**</u> |

Elizabeth Rozon Baksh
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019
Telephone: (212) 415-9200
baksh.elizabeth@dorsey.com

Creighton R. Magid
(admitted *pro hac vice*)
DORSEY & WHITNEY LLP
1401 New York Avenue, N.W.
Suite 900
Washington, D.C.  20005
Telephone:  (202) 442-3555
magid.chip@dorsey.com

*Attorneys For Defendant*
*Dr Pepper/Seven Up, Inc.*

Date:  October 23, 2025

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

APPLICABLE LEGAL STANDARD ..................................................................................1

NO REASONABLE CONSUMER WOULD BE MISLED BY THE "CANADA DRY"
    BRAND NAME..................................................................................................................2

PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND...........................................10

CONCLUSION......................................................................................................................10

# TABLE OF AUTHORITIES

Page

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 1

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 1

*Brady v. Bayer Corp.*, 237 Cal. Rptr.3d 683 (Cal. App. 2018) .............................................. 7

*Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83 (S.D.N.Y. 2021) ................................ 7

*Culver v. Unilever United States, Inc.*, 2021 WL 2943937 (C.D. Cal. June 14, 2021) .................. 8

*De Dios Rodriguez v. Olé Mexican Foods*, 2021 WL 1731604 (C.D. Cal. Apr. 22, 2021) ........... 5

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) ................................................................ 1

*Eshelby v. L-Oréal USA, Inc.*, 664 F. Supp. 3d 417 (S.D.N.Y. 2023) .................................... 7

*Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013) ..................................................... 2

*Foman v. Davis*, 371 U.S. 178 (1962) .................................................................................. 10

*Fortis Bank S.A./N.V. v. Brookline Fin. LLC*, 2011 WL 1642468 (S.D.N.Y. Apr. 27, 2011) ...... 10

*Geffner v. Coca-Cola Co.*, 928 F.3d 198 (2d Cir. 2019) ........................................................ 8

*Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014) ............ 7

*Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453 (S.D.N.Y. 2020) ........................ 3, 5, 6, 8

*Himmelstein, McConnel, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169 (2021) .................................................................................................. 9

*Jessani v. Monini N. Am., Inc.,* 744 Fed. Appx. 18 (2d Cir. 2018) ......................................... 1

*Kay v. Copper Cane, LLC*, 549 F. Supp. 3d 1014 (N.D. Cal. 2021) .............................. 4, 5, 6

*Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012) ..................................... 2

*Mantikas v. Kellogg Company*, 910 F. 3d 633 (2d Cir. 2018) .......................................... 9, 10

*Marty v. Anheuser-Busch Companies, LLC*, 43 F. Supp. 3d 1333 (S.D. Fla. 2014) ............ 3, 4

*Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2000) ........................................... 7

*Nelson v. MolsonCoors, LLC*, 246 F. Supp. 3d 666 (E.D.N.Y. 2017) .............................................. 8

*Peacock v. Pabst Brewing Co., LLC*, 491 F. Supp. 3d 713 (E.D. Cal. 2020) ............................. 4, 6

*Shakilar v. Asahi Beer U.S.A.*, 2017 U.S. Dist. LEXIS 221388, 2017 WL 9362139 (C.D. Cal. Oct. 16, 2017) ................................................................................................. 5

*Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858 (N.D. Cal. 2022) ................................................. 6

*Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268 (S.D.N.Y. 2021) ......................................... 2

*Wasser v. All Market, Inc.*, 2017 WL 11139701 (S.D. Fla. Nov. 13, 2017) ................................... 5

**Statutes**

GBL §§ 349 or 350 ........................................................................................................................ 2

**Rules**

F.R.C.P. Rule 15 ......................................................................................................................... 10

Plaintiff Karin Piotroski, in her Opposition, fails to answer two critical questions: (1) why a significant number of reasonable consumers would understand the "Canada Dry" brand name to suggest that the brand's carbonated beverages are made in Canada – particularly when the packaging clearly identifies the beverages as being made under the authority of an American beverage company, and (2) why the place of manufacture would be *material* to a reasonable consumer. These failings are fatal to Plaintiff's case and compel dismissal. Plaintiff's scattershot arguments misstate the relevant law and wholly fail to address the gist of Dr. Pepper/Seven Up, Inc.'s arguments.

## **APPLICABLE LEGAL STANDARD**

Plaintiff does not dispute that, to survive a motion to dismiss, "plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.' Rather, plaintiffs must plausibly allege 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Jessani v. Monini N. Am., Inc.,* 744 Fed. Appx. 18, 19 (2d Cir. 2018) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). Nor does Plaintiff dispute that a complaint lacks facial plausibility – and therefore must be dismissed – where it lacks "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007)), and instead merely "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).[1] Instead, Plaintiff proffers a number of quotations out of context to suggest that a court must simply accept as true anything that a

---

[1] It is unclear why Plaintiff refers to Fed. R. Civ. P. 9(b). *Twombly* and *Iqbal* both refer to pleading requirements under Rule 8.

plaintiff asserts in a complaint. That, however, is directly contrary to the holdings of *Twombly* and *Iqbal*. Even Plaintiff's own authorities make clear that a court should assume the veracity only of plausible allegations. *See*, *e.g.*, *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 275 (S.D.N.Y. 2021) (making it clear that the language quoted by Plaintiff is subject to the complaint containing *plausible* allegations that satisfy *Iqbal*). Moreover, Plaintiff's suggestion has been explicitly rejected by the Second Circuit, which held in *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) that "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." [2] This is a case in which such a determination is appropriate.

Plaintiff also errs in asserting that *materiality* is somehow irrelevant because *reliance* is not an element of a claim under GBL §§ 349 or 350. Reliance and materiality are two distinct issues. It may be true that Plaintiff does not have to show that she or any putative class members *justifiably relied* on the label, but *materiality* is still very much at issue. Even Plaintiff's own case law makes pellucidly clear that, to assert a claim under GBL §§ 349 or 350, a plaintiff must show that the defendant's conduct is "*materially* misleading." *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012) (emphasis added).

### NO REASONABLE CONSUMER WOULD BE MISLED BY THE "CANADA DRY" BRAND NAME

Case authority concerning alleged label misrepresentations – including the cases cited by Plaintiff – falls into two categories: those containing multiple words and graphics that, taken together, connote particular qualities or ingredients and those that do not. The former are

---

[2] Plaintiff proffers another version of her argument at page 9 of the Opposition. Again, while it may be true that deciding between two *plausible* interpretations is not appropriate on a motion to dismiss, the law remains clear that a court can grant a motion to dismiss where, as here, the plaintiff's claim lacks plausibility.

2

generally actionable unless disclaimed by a label statement. The latter are not actionable. The labels on Canada Dry beverages fall squarely in the second category.

*Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453 (S.D.N.Y. 2020), upon which Plaintiff places great reliance, is a case in point. The *Hesse* court pointed to a "mosaic" of representations that could have led a reasonable consumer to understand from the packaging of Godiva chocolates that the chocolates were produced in Belgium. *Id*. at 468. In addition to the "Belgium 1926" statement – the sole focus of Plaintiff's quotation from the case – the court pointed to the following:

> [S]ome of Godiva's packaging and social-media advertising describe the chocolates as Belgian. The front packaging of one of its boxes, for example, contains the phrase "ASSORTED *BELGIAN* CHOCOLATE CARAMELS." Similarly, its social-media advertising states "Delicious *Belgian* chocolates brought to you . . .."

*Id*. at 468 (emphasis in original) (internal citations omitted).

Furthermore, the court noted that the complaint had explained why consumers would attach particular importance to chocolates made in Belgium:

> Plaintiffs point to tangible and intangible differences in reputation and ingredients between American and Belgian chocolates. For example, they note that "Belgium is widely understood and recognized as producing among the highest quality chocolates in the world. And they assert that American chocolate differs in taste from that produced in Belgium, due "to the use of different butters, creams, and alcohol."

*Id*. at 461 (internal citations omitted).

The other cases cited by Plaintiff are similar. In *Marty v. Anheuser-Busch Companies, LLC*, 43 F. Supp. 3d 1333 (S.D. Fla. 2014), for example, the labels on Beck's beer stated that the beer embodied "German Quality" and was "Brewed Under the German Purity Law of 1516." *Id*. at 1340. This, combined with "defendant's overall marketing campaign and its efforts to maintain Beck's brand identity as a German Beer" and "Beck's German heritage including its

3

139-year history of being brewed in Germany," was sufficient to conclude that a reasonable consumer could be misled to believe that Beck's was imported from Germany. *Id*. at 1342. Although the label contained a "Product of USA" disclaimer, the court noted that the disclaimer (1) "can be obscured by overhead lighting because the disclaimer is printed in a white font against a shiny, metallic silver background" and (2) is obscured by the outer carton, such that a consumer would have to open the carton to see it. *Id*. at 1341.

Similarly, the labels in *Kay v. Copper Cane, LLC*, 549 F. Supp. 3d 1014 (N.D. Cal. 2021), although produced in California, described the wine as an "Oregon Pinot Noir" and referenced "the 'coastal hills' of Oregon as an 'ideal region to grow'" pinot noir. *Id*. at 1019. The labels also included a map of Oregon and denoted the locations of the Willamette, Umpqua, and Rogue valleys – all specifically designated viticultural areas – as well as the phrase "Purely Oregon, Always Coastal." *Id*. The wine's marketing materials designated the three valleys as "Regions of Origin" and described them as "premier growing regions along Oregon's coast" and boxes in which the wine was shipped referred to the "Oregon Coast" and the three valleys. *Id*. Denying the motion to dismiss, the court emphasized "the widely understood fact that the location where a wine is produced has special significance." *Id*. at 1025.

Likewise, *Peacock v. Pabst Brewing Co., LLC*, 491 F. Supp. 3d 713 (E.D. Cal. 2020), turned on multiple references to the provenance of a specific, key ingredient. The labels on cans of Olympia beer – historically brewed "in Tumwater, Washington, which borders Olympia, Washington" – represented that the beer was "The Original Olympia Beer," included the slogan "It's the Water" and included "an image of a cascading waterfall (a reference to the site of the original brewery)." *Id*. at 716-17. Additionally, the defendant's Facebook page included "a picture showing the product and a waterfall in the background with the caption 'It really is the

4

water #OlympiaBeer.'" *Id*. at 717. As in *Hesse* and *Kay*, the multiple references to specific and material product attributes established a plausible claim that reasonable consumers could be misled into believing that the beer was brewed with artesian water from Olympia, Washington.

*Shakilar v. Asahi Beer U.S.A.,* 2017 U.S. Dist. LEXIS 221388, 2017 WL 9362139 (C.D. Cal. Oct. 16, 2017), is in the same vein. The label on the beer included

> (i) the name "Asahi," which means "morning sun" in Japanese, is translated into English; (ii) the Japanese Katakana script アサヒビール which in Japanese is pronounced "Asahi beer,"; (iii) the Japanese Katakana script スーパードライ which in Japanese means "Super Dry," is used; and (iv) the Japanese Kanji characters 辛口 which in Japanese are pronounced, "Karakuchi," and mean "dry taste," are used.

*Id*. at *18-19.[3] As in the other cases cited by Plaintiff, the label contained numerous suggestions that the beer was a Japanese import.[4] Additionally, and importantly, the complaint referenced a consumer survey indicating that 86 percent of adults who viewed the packaging believed that the beer was produced in Japan. *Id*. at *19.

Similarly, in *Wasser v. All Market, Inc*., 2017 WL 11139701 (S.D. Fla. Nov. 13, 2017), the court found that the defendant's label statement "Born in Brazil" on its coconut water could not be evaluated "in a vacuum, but rather in context with" the defendant's overall marketing strategy, which included "efforts to associate Vita Coco with Brazil," *id*. at *5, and "the 'agua de coco' popular in Brazil." *Id*. at *1. Taken together, the court found that reasonable consumers could understand the label to represent that the product was produced from Brazilian coconuts.

---

[3] The Lexis version is cited here because only the Lexis version includes the Katakana script.
[4] Similarly, the court in *De Dios Rodriguez v. Olé Mexican Foods*, 2021 WL 1731604 (C.D. Cal. Apr. 22, 2021), concluded that the combination of the phrase "El Sabor de Mexico!" ("A Taste of Mexico!") on packages of tortillas, a Mexican flag on the front and center of the packaging, the "La Banderita" ("the flag"), the word "Authentic" on the packaging, and such Spanish-language words and phrases as "Sabrosísimas" and "Tortillas de Maiz" on the packaging could lead a reasonable consumer to believe that the tortillas were made in Mexico.

5

Finally, *Sinatro v. Barilla Am., Inc*., 635 F. Supp. 3d 858 (N.D. Cal. 2022), like *Hesse*, *Kay*, and *Peacock*, made multiple representations suggesting the source of a specific ingredient that would be material to consumers. The complaint in *Sinatro* alleged that "Italian pasta is one of the most sought after products in the global market" and that "Italian durum wheat is among some of the 'best varieties' of wheat." *Id*. at 865. The packaging of Barilla pasta included the statement "ITALY'S #1 BRAND OF PASTA" surrounded by the green, white, and red colors of Italy's flag. *Id*. Additionally, Barilla's marketing campaign included "websites, a Barilla Historical Archive, a Barilla Pasta Museum, and Barilla Academy," *id.*, that "emphasizes the company's Italian identity, including a website 'that markets the Barilla brand and company as undeniably Italian, dedicated to the manufacturing, marketing, and selling of Italian-made pastas." *Id*. at 878. Taken together, these efforts "support[] a reasonable inference that the products were made in Italy from Italian ingredients." *Id*.

Unlike the products in the cases cited by Plaintiff, all of which contain multiple references to and suggestions of places or origin, the only mention of "Canada" in Canada Dry products is the brand name. There is no map of Canada, nor is there any Canadian imagery. The label colors are dissimilar from the Canadian flag. There is no marketing campaign focused on Canada. Nor, importantly, is there any suggestion that Canada has any association with particular ingredients in carbonated beverages, unlike the Italian durum wheat in *Sinatro*, specific Oregon viticultural areas in *Kay*, artesian water from Olympia in *Peacock*, or Belgian chocolate in *Hesse*. There simply is no case law suggesting that a brand name, standing alone, suggests a location of manufacture – particularly when the brand name does not suggest a location associated with a particular ingredient or product attribute.

6

Plaintiff's argument that a brand name may be actionable is inapposite. To begin, Plaintiff misses the point of the "Canada Dry" brand name referring to a less sweet ginger ale rather than suggesting manufacture in Canada. That Dr Pepper/Seven-Up, Inc. has extended the brand to other, and possibly sweeter, beverages does not change the fact that "Canada Dry" is a brand name that, if associated with anything, is associated with a particular type of ginger ale – not a place of production.

Second, the cases Plaintiff cites in which a brand name has been found to be misleading all involve brand names that are "descriptive" of the product's composition or functional attributes. *See Brady v. Bayer Corp.*, 237 Cal. Rptr.3d 683, 694-95 (Cal. App. 2018) (collecting cases). For example, "One A Day" vitamin gummies imply "that the daily intake should be one per day," *id*. at 696; "Active Naturals" implies a natural product, *Goldemberg v. Johnson & Johnson Consumer Cos*., 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014); "Ritas" canned alcoholic beverages could plausibly imply a margarita cocktail made with tequila rather than a malt beverage, *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 96 (S.D.N.Y. 2021); and "Prescription Diet" pet food implies that the product includes "a medicine that involves a drug or controlled substance, *Moore v. Mars Petcare US, Inc*., 966 F.3d 1007, 1018 (9th Cir. 2000). Nothing in the Canada Dry brand name, by contrast, describes the beverages' composition or functional attributes

Plaintiff further fails in her attempts to address the case authority concerning labels, such as those on Canada Dry products, that (1) do not suggest a place of origin and (2) expressly disclaim any asserted association with a place of origin. She merely asserts that *Eshelby v. L-Oréal USA, Inc*., 664 F. Supp. 3d 417 (S.D.N.Y. 2023), was wrongly decided, using an argument tied to trademark law rather than to GBL §§ 349 and 350, rather than addressing the fact that

"Canada Dry" is far less suggestive of an imported product than is "L'Oréal Paris," which the court found non-actionable. Plaintiff tellingly offers no explanation why the Canada Dry brand name, standing alone, would imply an imported soft drink when Canada has no particular association with carbonated beverages; when labels of "Maille Dijon Originale Mustard" do not connote "a geographic source or origin" despite the brand name tracing back to 18th century France and the words "Paris," "Depuis 1747," and "Que Maille" appearing on the label, *see Culver v. Unilever United States, Inc.*, 2021 WL 2943937, at *8 (C.D. Cal. June 14, 2021); or when cans of Foster's – a well-known Australian beer – are non-actionable despite the presence on the label of an outline of Australia, images of a kangaroo and the Southern Cross constellation, and the slogans "Foster's – Australian for Beer" and "How to Speak Australian." *See Nelson v. MolsonCoors, LLC*, 246 F. Supp. 3d 666, 673 (E.D.N.Y. 2017).

Plaintiff's only real argument is that the disclaimer on labels (and outer packaging) of Canada Dry products states "PRODUCED UNDER THE AUTHORITY OF DR PEPPER/SEVEN UP, INC., 6425 HALL OF FAME LANE, FRISCO, TX 75034" rather than "BREWED IN THE UNITED STATES AND NOT IN CANADA." This argument is of no moment. As Judge Nathan noted in *Hesse*, "the reasonableness inquiry takes account of the entire context of a product's labeling." *Hesse*, 463 F. Supp. 3d at 468; *see also Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019) ("in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."). In the absence of any words or imagery suggesting foreign manufacture, and in the absence of any common association of Canada with carbonated beverages, "PRODUCED UNDER THE AUTHORITY OF DR PEPPER/SEVEN UP, INC., 6425 HALL OF FAME LANE, FRISCO, TX 75034" is more than sufficient to dispel any inkling that the beverages are Canadian in origin. No

reasonable consumer, seeing only a well-known brand name widely available throughout the United States, bearing no reference to being imported and no map or words or imagery suggesting an association with Canada, would conclude that a product produced under the authority of a large American beverage company was produced exclusively in Canada.[5]  A more explicit disclaimer may have been useful to counteract the impressions left by "L'Oréal Paris," "Depuis 1747," and "Foster's – Australian for Beer," but a specific statement of the place of manufacture (in addition to being impractical) is unnecessary in the context of the Canada Dry label.

Plaintiff's citation of *Mantikas v. Kellogg Company*, 910 F. 3d 633 (2d Cir. 2018), is equally unavailing.  *Mantikas* involved an affirmative representation, in large print and bold letters, on the front label of a package of Cheez-Its that the product was "MADE WITH WHOLE GRAIN."  The Nutrition Facts panel on the side of the box, however, revealed that the product was predominately made with white flour.  The Second Circuit held that "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in bold type on the front of the box." *Id*. at 637.  The Ninth Circuit did *not* hold, as Plaintiff suggests, that disclaimers are irrelevant to the reasonable consumer standard; indeed, the court reaffirmed that "an allegedly misleading statement must be viewed 'in light of its context on the product label or advertisement as a whole.'" *Id*. at 636 (citation omitted).  Moreover, the court made it clear that its holding was limited to clearly

---

[5] *Himmelstein, McConnel, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co*., 37 N.Y.3d 169 (2021), is not to the contrary, despite Plaintiff's suggestion otherwise. Himmelstein, which upheld the *dismissal* of a GBL § 349 claim, merely stands for the proposition that a disclaimer must do more than disclaim liability *generally* in order to defeat a GBL § 349 claim; it must address the substance of the claim.  The Canada Dry disclaimer does precisely that, as it addresses any asserted understanding that the Canada Dry brand name implies that the beverages are Canadian in origin.

deceptive, affirmative representations of product attributes, explicitly emphasizing that the "MADE WITH WHOLE GRAIN" statement was "deceptive" on its face and was made in "large, bold-faced" type. *Id*. at 637. Nothing in *Mantikas* suggests that the "PRODUCED UNDER THE AUTHORITY OF DR PEPPER/SEVEN UP, INC., 6425 HALL OF FAME LANE, FRISCO, TX 75034" disclaimer is not to be considered as part of the "context" in which the Canada Dry brand name appears on the product label, or as part of the overall "mosaic" of a label that contains no references to Canada or to the beverages being imported.

### **PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND**

Although Rule 15 provides that leave to amend should be freely granted "when justice so requires, it does not require leave to amend where, as here, Plaintiff points to nothing that would change the outcome. Leave to amend should not be granted where, as here, amendment would be futile, *Foman v. Davis*, 371 U.S. 178, 182 (1962), or where granting leave would grant a litigant "two bites at the apple." *Fortis Bank S.A./N.V. v. Brookline Fin. LLC*, 2011 WL 1642468, at *2 (S.D.N.Y. Apr. 27, 2011).

### **CONCLUSION**

Because no reasonable consumer would understand the packaging of Canada Dry beverages to suggest that the products are imported from Canada, Plaintiff's complaint should be dismissed.

Date: October 23, 2025               Respectfully submitted,


                                     */s/ Elizabeth Rozon Baksh*
                                     Elizabeth Rozon Baksh
                                     DORSEY & WHITNEY LLP
                                     51 West 52nd Street
                                     New York, NY 10019
                                     Telephone: (212) 415-9200
                                     baksh.elizabeth@dorsey.com

                                     Creighton R. Magid (admitted *pro hac vice*)
                                     DORSEY & WHITNEY LLP
                                     1401 New York Avenue, N.W.
                                     Suite 900
                                     Washington, D.C. 20005
                                     Telephone: (202) 442-3555
                                     magid.chip@dorsey.com

                                     *Attorneys For Defendant*
                                     *Dr Pepper/Seven Up, Inc.*

# CERTIFICATION

I hereby certify pursuant to Local Rule 7.1(c) that, as calculated by the word-processing system used to prepare this document, this Reply in Support of Defendant's Motion to Dismiss contains 3,222 words (exclusive of the caption, table of contents, table of authorities, and signature block). This complies with the 3,500 word limit of Local Rule 7.1(c).

Date: October 23, 2025

*/s/ Elizabeth Rozon Baksh*
Elizabeth Rozon Baksh
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019
Telephone: (212) 415-9200
baksh.elizabeth@dorsey.com

Creighton R. Magid (admitted *pro hac vice)*
DORSEY & WHITNEY LLP
1401 New York Avenue, N.W.
Suite 900
Washington, D.C. 20005
Telephone: (202) 442-3555
magid.chip@dorsey.com

*Attorneys For Defendant*
*Dr Pepper/Seven Up, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 23, 2025, I caused copies of the foregoing REPLY IN SUPPORT OF MOTION TO DISMISS to be served on Plaintiff's counsel using the CM/ECF system.

              */s/ Elizabeth Rozon Baksh*
              Elizabeth Rozon Baksh