FILED
CLERK
6/25/2026 1:25 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------X
KARIN PIOTROSKI,

Plaintiff,

-against-

DR PEPPER/SEVEN UP, INC.

Defendant.
--------------------------------------------X

ORDER
25-CV-4818 (JS)(SIL)

APPEARANCES

For Plaintiff
Karin Piotroski: Charles D. Moore, Esq.
Reese LLP
121 N. Washington Avenue, 2nd Floor
Minneapolis, Minnesota 55402

Michael R. Reese, Esq.
Reese LLP
100 West 93rd Street, 16th Floor
New York, New York 10025

Ben Travis, Esq.
Ben Travis Law, APC
4660 La Jolla Village Drive, Suite 100
San Diego, California 92122

For Defendant Dr. Pepper/Seven Up, Inc.: Elizabeth Rozon Baksh, Esq.
Dorsey & Whitney LLP
51 West 52nd Street
New York, New York 10019

Creighton R. Magid, Esq.
Dorsey & Whitney LLP
1401 New York Avenue, N.W., Suite 900
Washington, D.C. 20005

SEYBERT, District Judge:

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Dr Pepper/Seven Up, Inc. ("Defendant") moves to dismiss the complaint filed by Plaintiff Karin Piotroski ("Plaintiff"), which alleges Defendant violated Sections 349 and 350 of the New York General Business Law ("NYGBL") through use of the "Canada Dry" brand name on its ginger ale products (hereafter, the "Motion"). (See, ECF No. 16; see also Compl., ECF No. 1; Support Memo, ECF No. 17; Opp'n, ECF No. 19; Reply, ECF No. 20.) For the reasons set forth below, Defendant's Motion is GRANTED, and the Complaint is dismissed without leave to amend.

## BACKGROUND

### I. Allegations About "Canada Dry" Branding

On August 29, 2025, Plaintiff filed the Complaint, alleging she purchased Canada Dry beverages at some point after August 29, 2022. (See generally Compl. ¶¶ 10, 47.) Plaintiff claims the "Canada Dry" brand name "mislead[s] reasonable consumers to believe that the beverages are produced in Canada," when they are in fact produced in the United States. (Id. ¶ 2.) According to Plaintiff, this purported misrepresentation causes consumers to pay a "price premium" for the beverages because

"consumers are willing to pay premium prices for products that are authentically connected to a significant geographical area." (Id. ¶¶ 15-16.) Based upon these allegations, Plaintiff asserts claims under New York General Business Law Section 349 ("§ 349"), which prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in" New York, and New York General Business Law Section 350 ("§ 350"), which prohibits "[u]nfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York. (Id. ¶¶ 52–70.) As Plaintiff is a resident of New York and Defendant is a Delaware corporation with a principal place of business in Texas, diversity of citizenship forms the basis for federal jurisdiction. (Id. ¶¶ 7, 10-11.)

## II. Defendants' Motion and Plaintiff's Opposition

On October 2, 2025, Defendant served its Motion and an accompanying Support Memo. (See generally Motion and Support Memo). Defendant argues the "Canada Dry" brand name cannot plausibly mislead a reasonable consumer into believing the beverages are manufactured in Canada, as the brand name refers to a "dry, not syrupy" style of beverage rather than a representation of geographic origin. (Support Memo at 1, 3, 7.) In support, Defendant cites to several authorities holding the mere use of a

geographic term in a product's branding or packaging, without more, will not render a label misleading. (Id. at 4–7.) Defendant also observes that Canada Dry cans contain an all-caps disclaimer stating the beverages are "PRODUCED UNDER THE AUTHORITY OF DR PEPPER/SEVEN UP, INC., 6425 HALL OF FAME LANE, FRISCO, TX 75034." (Id. at 1.)

On October 16, 2025, Plaintiff served an Opposition, asserting the Canada Dry brand name constitutes an actionable misrepresentation and arguing to conclude otherwise would require the Court to find "Canada does not mean Canada." (Opp'n at 4.) In support, Plaintiff largely cites to authorities where a brand name was found to be actionable because (1) a plaintiff pleaded facts demonstrating a geographic term bore on a product's quality, or (2) a product was accompanied with additional language, imagery, or marketing materials suggesting the product originated from the referenced location. (See generally Id.) Plaintiff further argues that dismissal is inappropriate because her interpretation is, at minimum, one of several competing reasonable interpretations of the phrase "Canada Dry," and the Court should not resolve such a factual dispute on a Rule 12(b)(6) motion. (Id. at 9.) On October 23, 2025, Defendant filed a Reply. (See generally Reply.)

# DISCUSSION

## I. Applicable Law

### A. Rule 12(b)(6)

A claim is properly dismissed pursuant to Rule 12(b)(6) where it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In determining whether to grant a Rule 12(b)(6) motion, courts must "accept as true the factual allegations contained in the complaint and draw all inferences in plaintiff's favor." Glob. Network Commc'ns,Inc. v. City of N.Y., 458 F.3d 150, 154 (2d Cir. 2006). To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Basile v. Levittown United Tchrs., 17 F. Supp. 3d 195, 200 (E.D.N.Y. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do[.]" Twombly, 550 U.S. at 555

(internal citations omitted).

a. New York General Business Law §§ 349 and 350

As the Court explained in Bowring v. Sapporo U.S.A., Inc.:

> Plaintiff alleges violations of New York General Business Law §§ 349 and 350, which prohibit "deceptive acts or practices" and "false advertising" in the conduct of any business, trade, or commerce in New York. To assert a claim under either section, a plaintiff must establish that the defendant engaged in consumer oriented conduct that is materially misleading, and plaintiff was injured as a result of the deceptive act or practice. See Sitt v. Nature's Bounty, Inc., No. 15-CV-4199 (MKB), 2016 WL 5372794, at *7 (E.D.N.Y. Sept. 26, 2016) (citation omitted). To prove conduct was materially misleading, a plaintiff must demonstrate that it would mislead "a reasonable consumer acting reasonably under the circumstances." Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (citation omitted). This reasonable consumer inquiry is factual and in most instances, not resolved at the motion to dismiss stage. However, a court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer. See Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013) (citation omitted). In so doing, "[c]ourts view each allegedly misleading statement in light of its context . . . [t]he entire mosaic is viewed rather than each tile separately." Belfiore v. Procter & Gamble Co., 311 F.R.D. 29, 53 (E.D.N.Y.), reconsideration denied, 140 F. Supp. 3d 241 (E.D.N.Y. 2015) (internal quotation marks omitted) (citation omitted).

234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017).

## II. Application

### A. Plaintiff Fails to Demonstrate a "Premium" Exists

Plaintiff alleges "Defendant's improper consumer-oriented conduct is misleading in a material way in that it, inter alia, induced Plaintiff and other Class Members to purchase and/or pay a premium for Defendant's Products and to use the Products when they otherwise would not have." (Compl. ¶ 56.) Yet the Complaint does not plausibly allege that any such Canada Dry "premium"—whether import-related or otherwise—actually exists. The only sources Plaintiff provides as evidence of the Canada Dry price "premium" are two Wal-Mart hyperlinks listing twelve packs of Schweppes, a competing ginger ale brand, and Canada Dry. (Id. ¶ 38.) These hyperlinks now show different prices from those alleged in the Complaint. Additionally, it is unclear why Schweppes was chosen as the appropriate comparator, why Wal-Mart was selected as the relevant retailer, or how the alleged premium persists at retailers other than Wal-Mart. This deficiency alone is fatal to Plaintiff's claims.

### B. Plaintiff's Fails to Allege "Canada" Bears on Quality

Plaintiff's Opposition relies upon a line of cases where geographic branding was found potentially misleading, but only where the complaint alleged specific facts showing that the referenced geographic origin bore on the product's quality. Here, by contrast, Plaintiff does not plausibly allege why Canadian

ginger ale commands a premium over domestically produced ginger ale.

For example, Plaintiff's allegations stand in stark contrast to those made in Hesse v. Godiva Chocolatier, Incorporated, a case she relies upon. 463 F. Supp. 3d 453 (S.D.N.Y. 2020). In Godiva, the plaintiff alleged a chocolate company's "Belgium 1926" branding on all packaging, storefronts, and advertising, which was often paired with phrases like "Assorted Belgian Chocolate Caramels" or "Delicious Belgian Chocolates", misled consumers into believing the products were manufactured in Belgium. Id. at 460-61, 468. The court declined to dismiss the plaintiff's complaint, which included allegations there were "tangible and intangible differences in reputation and ingredients between American and Belgian chocolates," and the Court found it plausible that consumers could reasonably believe the packaging reflected a Belgian origin. Id. at 461, 469-70. Similarly, in Marty v. Anheuser-Busch Companies, LLC, a court denied a motion to dismiss where a complaint alleged Beck's beer was marketed with phrases such as "Originated in Germany," "German Quality," and "Brewed Under the German Purity Law of 1516." 43 F. Supp. 3d 1333, 1340, 1345 (S.D. Fla. 2014). Despite Plaintiff's reliance on this case, it is inapposite given that dismissal was denied on grounds German origin conveyed information about the beer's quality. Id. at 1348. Likewise, in Sinatro v. Barilla America, Incorporated,

a court declined to dismiss allegations based on packaging that prominently displayed "ITALY'S #1 BRAND OF PASTA®" alongside the colors of the Italian flag even though the pasta was produced in the United States using non-Italian ingredients, on grounds the complaint alleged authentic Italian pasta was considered a higher-quality product. 635 F. Supp. 3d 858, 865, 878-79 (N.D. Cal. 2022); see also Kay v. Cooper Cane, LLC, 549 F. Supp. 3d 1014, 1025 (N.D. Cal. 2021) (geographic references to Oregon on wine packaging were material because of the "widely understood fact that the location where a wine is produced has special significance"); Peacock v. Pabst Brewing Co., 491 F. Supp. 3d 713, 717, 721 (E.D. Cal. 2020) (holding plaintiff plausibly alleged false impression where Olympia Beer, which had been brewed in Washington but since relocated, still used the phrases "The Original Olympia Beer" and "It's the Water" alongside a waterfall image drawing upon the beer's original brewing location).

By contrast, Culver v. Unilever United States, Incorporated provides a more helpful parallel. No. 19-CV-9263, 2021 WL 2943937, at *1 (C.D. Cal. 2021). In Culver, the plaintiff alleged a Canadian-produced mustard bearing French-language labeling and imagery misled consumers into believing it was manufactured in France. See id. at *1. The Court rejected this argument, in part because the plaintiff failed "to establish or aver that all (or even a significant percentage of) California

consumers of the Products really care where the mustards were manufactured." Id. at *7. The same deficiency is present here. Plaintiff alleges no facts suggesting that consumers attach any particular significance to whether ginger ale is produced in Canada rather than the United States. Absent such allegations, Plaintiff fails to plausibly plead the Canada Dry brand name is materially misleading.

C. Defendant Persuasively Demonstrates That a Geographic Label, Without More, Does Not Constitute a Misleading Claim

In support of its Motion, Defendant persuasively cites a number of cases holding that the use of a geographic region or country name, standing alone, is insufficient to plausibly allege consumers are misled about a product's origin. For example, Defendant analogizes this case to Eshelby v. L'Oreal USA, Incorporated, where the plaintiff alleged the brand name "L'Oreal Paris" for cosmetic products misled consumers into believing the said products were manufactured in France. 664 F. Supp. 3d 417, 421 (S.D.N.Y. 2025). The court dismissed the complaint, explaining that a mere reference to a geographic location was insufficient to plausibly allege that a reasonable consumer would be misled about its origin. Id. at 425-26; see also Maeda v. Kennedy Endeavors, Inc., 407 F. Supp. 3d 953, 972 (D. Haw. 2019) ("The word 'Hawaiian,' combined with a single Hawai'i-related image simply could not deceive a reasonable consumer about the origin of the

Hawaiian Snacks.") (emphasis omitted); Broomfield v. Craft Brew Alliance, Inc., No. 17-CV-1027, 2017 WL 3838453, at *6 (N.D. Cal. Sept. 1, 2017) ("merely referencing Hawaii and its culture on the packaging is not enough on its own to confuse a reasonable consumer regarding the origin of the beer"); Dumas v. Diageo PLC, No. 15-CV-1681, 2016 WL 1367511, at *3 (S.D. Cal. Apr. 6, 2016) ("The mere fact that the word[s] 'Jamaica' and 'Jamaican' appear on the packaging is not sufficient to support a conclusion that consumers would be confused regarding the origin . . . of the beer.").

Given the guidance of these cases, the same result is warranted here, as the only reference to Canada on the Canada Dry packaging is the word "Canada" in the brand name. As Defendant underscores, in this case, the Canada Dry label contains no additional imagery suggesting Canadian origin, such as, e.g., "moose, plaid shirts, maple leaves, or other Canadian imagery." (Support Memo at 3.) Casting further doubt on a "Canada representation" is the printed disclosure on each Canada Dry can, which explains, in prominent capital letters that Canada Dry is "PRODUCED UNDER THE AUTHORITY OF DR PEPPER/SEVEN UP, INC." and includes a Frisco, Texas address. (Id. at 1.) Although Plaintiff faults the disclaimer for not expressly stating the beverages are produced in Texas, it nonetheless forms part of the "entire mosaic" demonstrating the packaging did not represent that the products were made in Canada. See Belfiore, 311 F.R.D. at 53 ("[c]ourts

view each allegedly misleading statement in light of its context . . . [t]he entire mosaic is viewed rather than each tile separately") (internal quotation marks and further citation omitted). This "entire mosaic" also demonstrates that there are no "competing interpretations" of the Canada Dry brand name that support denying dismissal, as use of the word "Canada," standing alone, does not support Plaintiff's interpretation. (Opp'n at 11-12.)

D. Plaintiff's Brand Name Argument Also Fails

Plaintiff's argument that the "Canada Dry" brand name is itself actionable fares no better. Most of the cases Plaintiff cites in support of the claim that a brand name may be actionable under § 349 and § 350 involve circumstances where the challenged brand name conveyed information about a qualitative aspect of the product, such as its ingredients, composition, or type. For example, in Cooper v. Anheuser-Busch, LLC, a plaintiff alleged that the front-label names "SPARKLING MARGARITA," "SPARKLING SANGRIA COCKTAIL," and "MOJITO FIZZ," when paired with cocktail and wine-glass imagery, misled reasonable consumers by suggesting the beverages contained tequila, wine, or rum, respectively, when they did not. 553 F. Supp. 3d 83, 102 (S.D.N.Y. 2021). Likewise, in Goldemberg v. Johnson & Johnson Consumer Companies, Incorporated, a court concluded that a plaintiff plausibly alleged a medicine brand with the phrase "Active Naturals" in the title

indicated the products were made exclusively from natural ingredients. 8 F. Supp. 3d 467, 471, 475 (S.D.N.Y. 2014). Similarly, in Ackerman v. Coca-Cola Company, a court found the plaintiff plausibly pleaded the brand name "Vitamin Water" was misleading because accompanying marketing phrases such as "vitamin enhanced water beverage", "vitamins + water = all you need", and "vitamins + water = what's in your hand" reinforced the mistaken impression that the product consisted only of vitamins and water. No. 09-CV-0395, 2010 WL 2925955, at *13 (E.D.N.Y. July 21, 2010); see also White v. T.W. Garner Food Co., 2023 U.S. Dist. LEXIS 133180, at *2 (C.D. Cal. 2023) (finding allegations regarding "Texas Pete" hot sauce plausible where label included imagery associated with Texas despite being manufactured in North Carolina); Brady v. Bayer Corp., 26 Cal. App. 5th 1156, 1170 (Cal. Ct. App. 2018) ("One-a-Day" vitamin brand name plausibly misled given the product's nutrition facts required more than one vitamin per day).

Unlike those cases, the term "Canada Dry" does not describe an ingredient, a product characteristic, or a qualitative attribute of the beverage. Nor is it accompanied by the type of reinforcing language or imagery that courts have found capable of misleading reasonable consumers. At most, Plaintiff alleges that the brand name contains a geographic reference, which is insufficient to state a claim under § 349 or § 350.

## III. Leave to Amend

In her Opposition, Plaintiff asserts leave to amend her complaint should be granted "if the Court finds that any aspect of Plaintiff's claims is insufficiently pled." (Opp'n. at 19.) Plaintiff does not explain how a proposed amendment would address the previously-discussed deficiencies, and solely appeals to the Second Circuit's "strong preference for resolving disputes on the merits." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015) (quoting Williams v. Citigroup Inc., 659 F.3d 208, 212–13 (2d Cir.2011)).

Plaintiff's failure to specify how amendment would cure the Complaint's deficiencies is fatal to her request. See TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014); cf. Food Holdings Ltd. v. Bank of Am. Corp., 423 F. App'x 73, 76 (2d Cir. 2011) (affirming denial of leave to amend the complaint where plaintiff made a boilerplate request "on the final page of their brief in opposition to defendants' motion to dismiss ... without any explanation as to why leave to amend was warranted"). Moreover, in a motion for leave to amend a pleading, Local Civil Rule 15.1 requires counseled parties to attach as an exhibit "(1) a clean copy of the proposed amended . . . pleading; and (2) a [redlined] version of the proposed pleading that shows . . . all differences from the pleading that it is intended to amend or supplement." See E.D.N.Y. Local Civ. R. 15.1(a). And,

as the "entire mosaic" of Canada Dry's packaging strongly supports dismissal (see supra pp. 11-12), it is not even clear how a subsequent attempt to amend the Complaint would even be able to cure its deficiencies. Accordingly, because Plaintiff has failed to properly present or support a request for leave to amend the Complaint, the Court, in its discretion, DENIES leave to amend. See, e.g., McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) ("it is within the sound discretion of the [Court] to grant or deny leave to amend").

## CONCLUSION

Because the Complaint fails to plausibly allege a materially misleading representation under New York General Business Law §§ 349 or 350, **IT IS HEREBY ORDERED** Defendant's Motion (ECF No. 16) to dismiss is **GRANTED**. Accordingly, all claims against Defendant are dismissed; and

**IT IS FURTHER ORDERED**, to the extend Plaintiff seeks to amend her Complaint, said request, raised in her Oppostion, is **DENIED**.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: June 25, 2026
Central Islip, New York